Matter of the Estate of ENOCH GEORGE MARGRAF, Deceased.

(Surrogate's Court, New York County, February, 1919.)

Wills — when probate decreed — what is sufficient to establish probate — evidence in probate proceeding of an instrument purporting to be the will of one who was killed in military service considered.

The evidence in a proceeding for the probate of an instrument in writing purporting to be the last will of the one who prepared it before his departure to France where he was killed while in the military service of the United States, considered, and *held*, that publicaton of said paper, duly witnessed by a man and his wife, old friends of the alleged testator and of the proponent, his fiancée, though it had no attestation clause, was sufficiently established and probate should be decreed.

PROCEEDING upon the probate of a will.

Surrogate's Court, New York County, February, 1919. [Vol. 106.

Harold Swain (Harold Swain and Robert W. Cromley, of counsel), for proponent.

Charles A. Conner, for contestant.

FOWLER, S. This is a contested probate proceeding in which the only issue before me involves the due execution of the paper propounded. The alleged testator was killed in France while in the military service of the United States. Before his entrance into the army he was employed in the office of the New York Institute for the Instruction of the Deaf and Dumb. The paper propounded herein was prepared by the testator on his typewriter in the office where he was employed on Sunday, the 24th day of March, 1918. The testator was then stationed at Camp Upton, and he wrote the alleged will on the letterhead of the institution. The paper propounded is as follows:

" NEW YORK, *March 25th,* 1918.

" To the parties concerned: In the event of anything happening to make my return impossible, it is my last wish that my fiancee, Bertha E. Dissinger, have every comfort that it is possible to give her from my estate, and that she be given sufficient money to insure her from want, and further, that she always be treated as she would have been if she had been my wife. Our engagement was announced in July last, and had it been possible we would have been married before my departure for foreign service, but, owing to military regulations, no time could be secured in which to be married. However, I look upon her as my own in every sense of the word, and desire that she be treated as such.

" My insurance policies are both made payable to my mother, and I have made a list of what moneys I have in the bank and other securities which are all

Misc.]    Surrogate's Court, New York County, February, 1919.

in my private drawer in the safe of the institution, and I expressly desire that Bertha be given at least one-fourth (¼) of all I have.

" This document is being made by me this 25th day of March, 1918, and I am in sound body and mind, and do attest it to be my profound wish that everything be done as designated in the event of my not returning.                    ENOCH GEORGE MARGRAF.

" Witnessed by MARY E. DAVIS, GEORGE H. DAVIS."

There is no formal attestation clause, but the paper is duly witnessed. The witnesses are husband and wife, and were old friends of both the testator and Miss Dissinger, the proponent. They were the only witnesses examined before the surrogate, the contestants, who are the parents of testator, offering no contrary proofs. Although the alleged will is dated March twenty-fifth, it was executed on Sunday, March twenty-fourth, but this point is immaterial.

By the testimony offered the facts concerning the execution of the instrument propounded herein appear to be as follows: On March 24, 1918, in the afternoon, the testator came to the office of the Institution for the Deaf and Dumb, and after opening his desk remarked to Mr. Davis, one of the subscribing witnesses, who was also an employee of the same institution: " I am going to make out a paper here, because I am going over to the other side, and in case anything should happen to me, I want to know that Miss Dissinger, who was to have been my wife, will be taken care of. If I write such a paper out, will you witness it?" Mr. Davis said, " Go ahead." Thereupon the testator himself on a " typewriter " wrote the will now offered, and upon completing the same he handed it to the witness Davis to read, which Davis did. He then asked if Mrs. Davis, too, would sign the paper,

and upon receiving a reply in the affirmative, said: "All right, we will have it signed."

It further appears that in the evening of the same day the testator and Miss Dissinger both repaired to the house of Mr. and Mrs. Davis for dinner. Shortly before dinner the testator took the paper propounded from his pocket and said to Mrs. Davis: " Mary, will you sign this as a witness to a paper I have here?" She said, " Certainly," and *read the paper*. Thereupon the testator signed the alleged will; Mrs. Davis then signed as first witness and Mr. Davis signed as the second witness. After the paper was signed the testator handed the paper to Mr. Davis, and said: " You take care of this; you know if anything happens, see that Miss Dissinger gets it." On this occasion the testator also said: " I am making this paper out so that Bertha will be taken care of if anything should happen to me, but I hope to come back and have the pleasure of tearing this up myself." Mr. Margraf at that time expected to leave for France. Both subscribing witnesses testified they thought they were witnessing a will, and that the testator was over twenty-one years of age, was under no restraint, and was competent to make a will.

It seems to me that the foregoing facts sufficiently establish a publication of a testamentary instrument by a testator. I could fortify the conclusion by a citation of cases were I so disposed. Consequently the paper propounded as the last will and testament of the testator should be admitted to probate.

Probate decreed.